

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00353-CR

**EX PARTE** John Matthew **GAMBOA**

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 1992CR4978-W1
Honorable Andrew Wyatt Carruthers, Judge Presiding

Opinion by: Patricia O. Alvarez, Justice

Sitting: Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Patricia O. Alvarez, Justice

Delivered and Filed: December 10, 2014

AFFIRMED

This appeal stems from the trial court's denial of Appellant John Matthew Gamboa's Amended Application for Writ of Habeas Corpus based on actual innocence. After deferentially reviewing the habeas court's factual findings regarding the "new" evidence, and comparing the new evidence in conjunction with the original trial evidence, we conclude Gamboa failed to unquestionably establish his innocence. We affirm the trial court's denial of Gamboa's application.

### FACTUAL BACKGROUND

In 1992, twelve-year-old Jessica Gonzales approached her middle school counselor and reported that Gamboa, her sister's husband, was "touching" her. On May 18, 1992, Gonzales signed a two-page, handwritten statement, witnessed by Cynthia Stewart, alleging that, on more

than one occasion, Gamboa "touched me on my bottom and on my butt." Gonzales also relayed that on one occasion he "touched me in the front with his hand both inside my pants and outside my pants."

Gamboa entered a plea of no contest in 1992 to indecency with a child and successfully completed four years of probation. Twenty years later, on June 13, 2012, Gonzales signed an affidavit stating, inter alia, the statements she made in 1992 were not true. "I was a twelve-year-old girl at the time of the alleged incidents. At that time I was angry at [Gamboa] for being mean to my sister and supposedly messing around behind her back." Gamboa subsequently filed a petition for writ of habeas corpus based on actual innocence.

During the proceedings, Gonzales testified that the acts of indecency never happened. She further claimed that she did not know that Gamboa had entered a plea of no contest to the allegations or that he had been on probation. Gonzales was adamant that she only made the statement to her school counselor and it was just to get back at Gamboa for cheating on her sister.

On April 10, 2014, the habeas court held that Gamboa failed to meet his burden of proving, by clear and convincing evidence, that (1) no juror would have convicted him in light of the new evidence and (2) he is actually innocent of the offense. This appeal ensued.

HABEAS REVIEW BASED ON ACTUAL INNOCENCE

A.    Standard of Review

In *Ex parte Navarijo*, 433 S.W.3d 558, 566–67 (Tex. Crim. App. 2014), the Texas Court of Criminal Appeals reiterated the appellate court's role in reviewing a convicted individual's claim of actual innocence. An applicant may obtain post-conviction relief based on a due process violation if the applicant "can establish by 'clear and convincing evidence' that 'no reasonable juror would have convicted him in light of the new evidence.'" *Id*. at 566 (quoting *Ex parte Elizondo*, 947 S.W.2d 202, 209 (Tex. Crim. App. 1996), *superseded by statute for death penalty*

*cases*, Act of May 19, 1995, 74th Leg. R.S., ch. 319, § 1, 1995 Tex. Gen. Laws 2764, 2766, *as recognized in Ex parte Blue*, 230 S.W.3d 151, 162 n.46 (Tex. Crim. App. 2007)). The applicant bears the burden to prove that, if true, the newly discovered evidence not only casts a sufficient doubt to undermine confidence in the verdict, but it also creates a probability that the verdict would be different on retrial. *Ex parte Elizondo*, 947 S.W.2d at 206. The test put forth in *Ex parte Elizondo* was "'whether the newly discovered evidence would have convinced the jury of applicant's innocence.'" *Ex parte Navarijo*, 433 S.W.3d at 567 (quoting *Ex parte Elizondo*, 947 S.W.2d at 207).

We, therefore, "'examine the new evidence in light of the evidence presented at trial,'" *id*. (quoting *Ex parte Thompson*, 153 S.W.3d 416, 417 (Tex. Crim. App. 2005)), and only grant relief if the "new facts 'unquestionably establish' the applicant's innocence." *Id*. (quoting *Ex parte Elizondo*, 947 S.W.2d at 209). In doing so, we defer "to the habeas court's fact findings, particularly those related to credibility and demeanor, when those findings are supported by the record." *Id.* "We similarly afford deference to the habeas court's rulings on mixed questions of law and fact, if the resolution of those questions turns on an evaluation of credibility and demeanor." *Id*. Mixed questions of law and fact not turning on credibility and demeanor are reviewed de novo. *Id*.

### B. Testimony from Habeas Hearing

At the hearing on Gamboa's application, Gonzales testified that after her husband's suicide, she began reflecting on her life and the people that she might have hurt. She spoke to Gamboa and he told her about pleading guilty and having to register as a sex offender. She was upset with what he had endured because of her allegations. On cross-examination, all she could remember about her previous allegations was Gamboa put his hand down her pants. She thought she had reported it happening in her bedroom. Although she claimed the allegations stemmed from being

very protective of her family, Gonzales also testified that she was not close with either her mother or her sister and had never discussed with them any of the alleged events or the consequences of her accusation. Gonzales was adamant that she never knew Gamboa was on probation, that one of the conditions of probation was that he was not allowed to be alone with her, or that he had been required to register as a sex offender. She remembered telling the school counselor, but denied discussing her allegations with anyone in her family, the caseworker from Child Protective Services, a police officer, anyone from the District Attorney's Office, or anyone preparing the presentence investigation report.

Marc Notzon, the prosecutor in 1992 when Gamboa entered his plea of no contest, testified that although he did not have an independent recollection of the case, he followed specific procedures when he prosecuted an indecency case. Notably, prior to trial or a plea bargain, the child would have spoken to a victim advocate and he would have insisted on interviewing the victim himself—especially in light of the personal connection between Gonzales, Gamboa, and Gonzales's sister. Notzon also testified that his records indicated that Gonzales relayed the same allegations to her mother and her sister.

## C.    Factual Findings by Habeas Court

After hearing testimony on two different occasions, the trial court made the following findings of fact:

1.  The Court heard testimony from two witnesses, the complainant Jessica Gonzales and the trial prosecutor at the time, Marc Notzon.

2.  Jessica Gonzales, now 33, testified that at the time she made the accusation against John Gamboa, he was her sister's boyfriend. He has since married her sister and they have six children. At the time, Jessica, who was eleven or twelve years old, was mad at [Gamboa] because he was cheating on her sister and getting physical with her. So to get even with him, she told her school counselor that he had touched her inappropriately. She said she did this because she is very protective of her family.

3. Jessica further testified that she did not know that as a result [Gamboa], who was by then her brother-in-law, was placed on probation for four years and had to register as a sex offender. She didn't know he pled no contest. Her lack of knowledge may have been because she is not close to her sister. She testified that in twenty years, [Gamboa] never confronted her about her accusation, nor did anyone else in her family talk to her about it, or about the consequences.

4. Jessica testified that she didn't tell anyone about this except her school counselor. When shown a signed statement she made to a Child Protective Services caseworker, she said she didn't remember writing it or being interviewed. She was not contacted by anyone in the District Attorney's Office until she was called by Assistant District Attorney Jay Brandon in 2013 in regards to this writ.

5. Jessica said she thought the school counselor she told would keep the information confidential. Asked how this would help her get back at [Gamboa] for his treatment of her sister, she said she didn't know. At the hearing, Jessica denied anything inappropriate ever happened. She said she was never alone with [Gamboa] except when he would take her to the store.

6. The other witness was Marc Notzon . . . [who] testified that he had no specific memory of this case, but could testify to how he had handled all such cases. He had been in the Family Violence Unit, which dealt with offenses against children, including sexual offenses.

7. Mr. Notzon testified that he always interviewed the child victim in any case. Typically he would talk to the child before each trial setting, and there had been several trial settings before Mr. Gamboa's plea. A victim's advocate from the District Attorney's Office would also have talked to the child. One reason for the prosecutor to talk to the child would be to determine a proper plea bargain to offer. Before agreeing to probation, he would always talk to the victim's family. According to the trial file, there was also a presentence investigation report, so a probation officer would have talked to the child as well. According to the State's file, several people had talked to the child, Jessica Gonzales.

The habeas court also made the following determination as to the credibility of the witnesses:

8. . . . . The Court finds Marc Notzon's testimony credible. Not only was Mr. Notzon personally credible, but his testimony reflects the Court's understanding of how a prosecutor would prepare for trial or for a plea bargain in a case such as this.

   The Court finds Jessica Gonzales's testimony not credible. It is not believable that she would make up allegations against her sister's boyfriend to get even with him, but then tell a counselor and expect the story to go no further. Nor is it believable that neither Applicant nor any member of her family for twenty years would talk to her about her accusation and its consequences. It is further not believable that her accusation could result in an arrest and court

proceedings without police or anyone from the District Attorney's Office ever talking to her. The Court found her testimony not credible.

**D.  Analysis**

We conclude that the trial court's findings are supported by the record. Although Gonzales is now recanting her previous statements, the testimony that she gave during the habeas proceeding is in conflict with evidence produced during the 1992 proceeding. Gonzales testified that she only spoke to her school counselor. Yet, the case file indicates that she spoke to the counselor, a victim advocate, her mother, her sister, the prosecutor, and the individual preparing the presentence investigation report. Gonzales also indicated during the habeas proceeding that she told the counselor that it only occurred one time in her bedroom. The statement she provided in 1992 indicates that it happened on several occasions. Because the habeas court's factual findings are supported by the record, we give deference to the habeas court's findings, as far as they pertain to credibility and demeanor. *See Ex parte Navarijo*, 433 S.W.3d at 566–67; *Ex parte Elizondo*, 947 S.W.2d at 209.

## CONCLUSION

In light of Gonzales's testimony, and the inherent conflicts between the story she originally told, the individuals with whom she would have spoken to before Gamboa was offered a plea from the State, and the unlikelihood that she never spoke about the allegations with her family, we cannot hold that "no reasonable juror would have convicted [Gamboa] in light of the new evidence." *See Ex parte Navarijo*, 433 S.W.3d at 566. Consequently, we conclude Gamboa failed to meet his burden that Gonzales's recantation testimony fails to unquestionably establish Gamboa's innocence. *Id.* at 568. Accordingly, we affirm the court's denial of Gamboa's application for writ of habeas corpus.

Patricia O. Alvarez, Justice

DO NOT PUBLISH